USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/20/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERNEST COVINGTON,

Plaintiff,

-against-

DEBORAH MOUNTRIES, Grievance Coordinator,

Defendant.

13-CV-343 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

*Pro se* Plaintiff Ernest Covington brings claims pursuant to 42 U.S.C. § 1983 alleging that Defendant Deborah Moultrie[1] violated his religious rights while Plaintiff was incarcerated at the George R. Vierno Center ("GRVC"). Plaintiff seeks both damages and injunctive relief. Defendant moves to dismiss the complaint for failure to state a claim. Because Plaintiff has not timely filed an opposition, the Court considers this motion fully-briefed. For the reasons stated below, Plaintiff is directed to file an amended complaint within 45 days of the date of this order. If he fails to do so, the Court will grant Defendant's motion to dismiss with prejudice.

## BACKGROUND

Plaintiff is a practicing Muslim who regularly attends Jumu'ah religious services.[2] On November 23, 2012, Plaintiff was "unlawfully locked in cell block 15B and deprived of attending religious services for obligatory worship and congregational prayer." (Compl. ¶ II.D.) Other practitioners in the same cell block were also prevented from attending services. (*Id.*)

[1] In her motion papers, Defendant indicates that her actual name is Deborah Moultrie. Although the caption has not been amended, the Court will refer to Defendant as Deborah Moultrie.
[2] These facts are based on the allegations in Plaintiff's complaint.

Plaintiff acknowledges that "the 15 building was on full . . . lockdown" that day. (*Id.* at 2.) Nevertheless, Plaintiff asserts that this lockdown was pretextual because he was permitted to leave his cell during breakfast that morning and "there were no incidents . . . [that justified] being locked down for [10.5] hours." (*Id.* at 5.) According to Plaintiff, while he was prohibited from leaving his cell, other inmates were permitted to attend religious services and otherwise move about the facility. (*Id.* at 5, ¶ II.D.) It is unclear, however, whether those inmates were housed in the same cell block as Plaintiff. According to Plaintiff, this was not the first instance in which he had been barred from attending Jumu'ah services. (*Id.* at 5.) On the other hand, Plaintiff also contends that he had not "miss[ed] a Jumu['ah] service[] in over 24 years." (*Id.* at 6.)

Five days after the November 23 lockdown, Defendant Moultrie, the prison's grievance coordinator, interviewed Plaintiff regarding his complaints. During the interview, Defendant purportedly "snatched papers out of [Plaintiff's] hand" and commented that she "d[idn't] like [his] attitude." (*Id.* at 4.) Defendant also told Plaintiff that he "wasn't a Muslim" and that he "shouldn't be incarcerated if [he] w[ere] a real Muslim." (*Id.* at 2.) She then told Plaintiff to "leave her office immediately." (*Id.* at 4.) Plaintiff filed a grievance concerning Defendant's behavior, but Plaintiff was not afforded another hearing. (*Id.* ¶ IV.G.) Defendant then "harassed and humiliated" Plaintiff both for his religious beliefs and in retaliation for his grievances. (*Id.* at 5.) On December 21, 2012, Plaintiff and "the entire population" were again barred from attending religious services. (*Id.* ¶ II.D.)

After Plaintiff filed his complaint, the case was reassigned to this Court on March 20, 2014. In addition to Defendant Moultrie, Plaintiff's complaint originally named GRVC Warden Edmund Duffy, GRVC Captain Smith, and GRVC Deputy Warden of Security Melendez as defendants. On April 24, 2013, those defendants were dismissed because Plaintiff had failed to allege any personal involvement in the alleged violation of his rights. *Covington v. Duffy*, No.

13-CV-343, slip op. at 2–3 (S.D.N.Y. Apr. 24, 2013) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).[3] Defendant Moultrie is thus the only remaining defendant in this action.

**DISCUSSION**

On a motion to dismiss, the Court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because Plaintiff is *pro se*, his complaint also "must be construed liberally and interpreted 'to raise the strongest arguments that [it] suggest[s].'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Even if the Court determines that a *pro se* complaint is insufficient, however, leave to amend should generally be granted "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). But leave to amend need not be granted if the amendment would be futile. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Finally, although Defendant's motion to dismiss is unopposed, the Court must still analyze the sufficiency of Plaintiff's complaint. *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000)).

[3] If the *pro se* plaintiff intended to name Duffy, Smith, and Melendez in their official capacities, dismissal of those defendants for lack of personal involvement may have been unwarranted. "[P]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983." *N.Y. Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 339 (E.D.N.Y. 2012) (quoting *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001)). Nevertheless, as explained further below, Plaintiff's request for injunctive relief is moot. Therefore, dismissal of those defendants was procedurally proper. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (cases filed *in forma pauperis* shall be dismissed "at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted").

**A. Relief Sought**

    **1. Injunctive Relief**

First, Plaintiff urges that he "seek[s] [a] remed[y] . . . [for] the behavior this facility['s] staff continuously practice[s] on a regular basis." (Compl. ¶ V.) Although not a model of clarity, the Court construes this statement as a claim for injunctive relief. But Plaintiff was transferred to a different prison shortly after commencing this action. *See Covington v. Mountries*, No. 13-CV-343 (S.D.N.Y. Feb. 6, 2013) (ECF No. 5). Accordingly, any claim for injunctive relief is moot.

"In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Here, Plaintiff's complaint arises from treatment he received from GRVC employees while he was incarcerated in that facility. The docket sheet, of which the Court takes judicial notice, and Plaintiff's last change of address card indicate that he is currently housed at Mohawk Correctional Facility. *See Covington v. Mountries*, No. 13-CV-343 (S.D.N.Y. June 10, 2013) (ECF No. 13); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice."). Plaintiff does not allege that he expects to be subjected to the same mistreatment at Mohawk. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (noting "exception to the mootness doctrine for challenged actions that are 'capable of repetition, yet evading review'" (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982))). Any claim for injunctive relief is therefore moot.

    **2. Monetary Relief**

Defendant next urges that Plaintiff's claims for monetary relief should also be dismissed because he has failed to allege any physical harm. Under the Prison Litigation Reform Act

("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). Plaintiff does not allege any physical injury. Instead, Plaintiff claims that he suffered harassment, humiliation, general frustration, and degradation from Defendant's discriminatory comments and the denial of religious services. Although the PLRA bars compensatory damages "for mental or emotional injury," other categories of monetary relief remain available.

First, Plaintiff may still recover punitive or nominal damages. *See Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) ("Section 1997e(e) does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages."). Second, even without physical injury, Plaintiff may also recover "compensatory damages for the loss of a constitutional liberty interest" secured by the First Amendment. *Rosado v. Herard*, No. 12 Civ. 8943, 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014); *see Malik v. City of N.Y.*, No. 11 Civ. 6062, 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations."), *report and recommendation adopted*, No. 11 Civ. 6062, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012). Such damages "are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Rosado*, 2014 WL 1303513, at *13 (quoting *Kerman v. City of N.Y.*, 374 F.3d 93, 125 (2d Cir. 2004)). Accordingly, although the absence of physical harm limits some forms of damages available to Plaintiff, dismissal of all of his claims for monetary relief is unwarranted.

**B. Denial of Religious Services**

**1. Free Exercise and RLUIPA Claims**

Although Plaintiff cites no specific statutes or constitutional provisions in his complaint, the Court construes his contention that he was wrongfully denied the ability to attend religious services as a claim under the First Amendment's Free Exercise Clause and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* *See, e.g.*, *Joseph v. Fischer*, No. 08 Civ. 2824, 2009 WL 3321011, at *17 & n.7 (S.D.N.Y. Oct. 8, 2009) (construing complaint as stating RLUIPA claim despite *pro se* plaintiff's failure to cite statute).

The Court first analyzes Plaintiff's religious claims under the First Amendment. Given the "complex duties arising from administration of the penal system," Free Exercise claims brought by prisoners are analyzed differently than those brought by persons who are not incarcerated. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). "[A] challenged prison regulation is judged 'under a reasonableness test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster 'if it is reasonably related to legitimate penological interests.'" *Salahuddin*, 467 F.3d at 274 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) (internal quotation marks omitted).

Defendant, citing *Salahuddin*, urges that Plaintiff must demonstrate at the threshold a "substantial burden" on his sincerely held religious beliefs. *Id.* at 274–75. Although many courts in this circuit have assumed that a substantial burden is necessary to state a First Amendment Free Exercise claim, *see, e.g.*, *JCG v. Ercole*, No. 11 Civ. 6844, 2014 WL 1630815, at *21 (S.D.N.Y. Apr. 24, 2014) (collecting cases), the Second Circuit in *Salahuddin* declined to resolve the plaintiff's argument "that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement." *Salahuddin*, 467 F.3d at 275 n.5;

*see also Ford*, 352 F.3d at 591–92 (describing development of circuit split regarding substantial burden requirement). Given that Defendant's motion is unopposed, the Court will also assume for the purpose of deciding this motion that Plaintiff must demonstrate a substantial burden to state a Free Exercise claim. *See Ford*, 352 F.3d at 592 (assuming that substantial burden test applies given plaintiff's failure to argue otherwise and because the parties had not briefed the issue).

Even applying the substantial burden test, however, Plaintiff states a viable First Amendment Free Exercise claim. Whether Plaintiff's religious beliefs were substantially burdened turns on whether attending weekly Jumu'ah services "is considered central or important to [Plaintiff's] practice of Islam." *Id.* at 593–94. Applying this test is not easily accomplished on a motion to dismiss, given that "the substantial burden test requires courts to distinguish important from unimportant religious beliefs." *Id.* at 593. "Always present is the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent rather than confront the often more difficult inquiries into sincerity, religiosity and the sufficiency of the penological interest asserted to justify the burden." *Id.*

In support of the importance of missing even one Jumu'ah service, Plaintiff contends that he had "never miss[ed] a Jumu['ah] service[] in over 24 years whether incarcerated or not." (Compl. at 6.)[4] That pattern apparently ended when he was denied the ability to attend at least two services at GRVC, and possibly more. Further, although the Court is limited to the factual allegations in Plaintiff's pleading in deciding this motion to dismiss, even the Supreme Court has noted that attendance at Jumu'ah services "is commanded by the Koran and must be held every Friday." *O'Lone*, 482 U.S. at 345. Crediting Plaintiff's allegations concerning the importance of

[4] There is some tension between this allegation and the assertion referenced above that this was not the first instance in which Plaintiff was barred from attending Jumu'ah services. (Compl. at 6.)

Jumu'ah services to him and without the ability to weigh countervailing evidence, the Court cannot conclude at this time that the burden placed upon him was insubstantial as a matter of law.

Defendant next contends that even if Plaintiff's religious rights were substantially burdened, the burden imposed was "reasonably related to legitimate penological interests" given the lockdown on November 23. *See Salahuddin*, 467 F.3d at 274 (quoting *O'Lone*, 482 U.S. at 349). Whether the burden was reasonable requires consideration of four factors: (1) "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective"; (2) "whether prisoners have alternative means of exercising the burdened right"; (3) "the impact on guards, inmates, and prison resources of accommodating the right"; and (4) "the existence of alternative means of facilitating the exercise of the right that have only a de minimis adverse effect on valid penological interests." *Id.* (footnote omitted) (citing *Turner v. Safley*, 482 U.S. 78, 90–91 (1987)). This assessment "is a factual and context-specific inquiry" that is often inappropriate to determine on a motion to dismiss. *Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013).

Nevertheless, Defendant contends that the mere mention of a lockdown in Plaintiff's complaint means that he has not stated a claim. But Plaintiff also makes allegations that can be construed to assert that the lockdown was not imposed for legitimate reasons. First, Plaintiff alleges that the lockdown lasted for 10.5 hours despite there having been no incidents occurring that day that would warrant such action. (Compl. at 5.) Second, Plaintiff alleges that "other parts of the inmate population [were] functional" despite the purported lockdown and that his unit was not locked out until around 5:30 to 6:00 p.m. (*Id.* at 5, ¶ II.D.) Taking these allegations as true as the Court must, Plaintiff's allegations are sufficient to question the legitimacy of Defendant's explanation for burdening Plaintiff's religious exercise. Further, Defendant offers

no explanation, lockdown or otherwise, for the other instance on December 21, 2012 in which Plaintiff alleges he was denied Jumu'ah services. Thus, while Defendant may present evidence at a later stage demonstrating the propriety of the lockdown, Plaintiff's complaint sufficiently states a First Amendment violation to survive a motion to dismiss. *See, e.g.*, *Diggs v. Marikah*, No. 11 Civ. 6382, 2012 WL 934523, at *3 (S.D.N.Y. Mar. 20, 2012) (denying motion to dismiss Free Exercise claim where validity of defendants' explanation turned on contested facts in complaint).

As noted above, the Court also construes Plaintiff's complaint as invoking his rights under RLUIPA. That statute mandates that the government "shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." *Salahuddin*, 467 F.3d at 274 (footnote omitted) (quoting 42 U.S.C. § 2000cc-1(a)). Defendant did not address the applicability of RLUIPA to Plaintiff's claims. Instead, she analyzed Plaintiff's claims solely pursuant to the First Amendment's Free Exercise Clause. Plaintiff sufficiently pleads a substantial burden, as explained above, and Defendant has not argued that this burden nevertheless survives the heightened scrutiny RLUIPA imposes. Accordingly, Plaintiff's allegations also state a RLUIPA claim.

**2. Personal Involvement**

Although Plaintiff therefore states a cognizable infringement of his religious rights, Plaintiff failed to allege the factual circumstances demonstrating that Defendant, who is a grievance coordinator, not a correction officer, is responsible for that infringement. "[T]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138. "Personal involvement is also a prerequisite to a defendant's liability

under RLUIPA." *Vann v. Fischer*, No. 11 Civ. 1958, 2012 WL 2384428, at *5 (S.D.N.Y. June 21, 2012) (citing *Joseph*, 2009 WL 3321011, at *18).

The Second Circuit has not resolved whether *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon*, 720 F.3d at 139. Prior to *Iqbal*, the Second Circuit in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), had held that personal involvement could be demonstrated by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (emphasis omitted) (quoting *Colon*, 58 F.3d at 873). After *Iqbal*, many courts have held that "these 'categories supporting personal liability of supervisors still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.'" *See, e.g.*, *Hernandez v. Goord*, No. 01 Civ. 9585, 2013 WL 2355448, at *7 (S.D.N.Y. May 28, 2013) (quoting *Qasem v. Toro*, 737 F. Supp. 2d 147, 152 (S.D.N.Y. 2010)); *Delgado v. Bezio*, No. 09 Civ. 6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) (noting that "where the claim does not require a showing of discriminatory intent, the *Colon* analysis should still apply"). *But see Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster . . . .").

The Court declines to resolve these issues, however, because Plaintiff has not adequately pled Defendant's involvement even under *Colon*. *See Grullon*, 720 F.3d at 139 (declining to

resolve *Colon*'s tension with *Iqbal* while affirming dismissal under *Colon* analysis). In this regard, Plaintiff fails to allege Defendant's personal involvement in any conduct that actually resulted in the denial of Jumu'ah services on November 23, 2012. Without any allegations that Defendant was involved in the deprivation, Plaintiff's claims against Defendant regarding that incident must fail. *Cf. Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receipt of notice after the violation is insufficient to constitute personal involvement in the violation.").

Plaintiff also contends that less than one month after Defendant interviewed him, he was again denied Jumu'ah services on December 21, 2012. But Plaintiff's allegations do not tie Defendant to this deprivation. Indeed, not only does the complaint fail to describe how Defendant was involved, but it also lacks any allegations whatsoever regarding the circumstances of the December 21 denial. For this reason, although Plaintiff states cognizable Free Exercise and RLUIPA claims, he fails to state a valid claim against this particular Defendant. Given the existence of potentially viable claims, however, it is possible that the deficiencies in Plaintiff's complaint may be remedied. Accordingly, the Court will grant Plaintiff 45 days to amend his complaint, either by detailing Defendant's involvement or by naming and describing the parties actually involved in depriving him of Jumu'ah services. If Plaintiff does not amend within 45 days, his complaint will be dismissed with prejudice.

**C. Verbal Harassment**

Finally, the Court turns to Defendant's behavior towards Plaintiff during his interview following the November 21 denial of Jumu'ah services. Verbal harassment, even if inappropriate or unprofessional, does not constitute a violation of any federally protected right and is not actionable under 42 U.S.C. § 1983. *Bowden v. Duffy*, No. 13 Civ. 717, 2014 WL 338786, at *3 (S.D.N.Y Jan. 30, 2014) (citing *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)). To the extent Defendant did no more than make comments about Plaintiff's religious

beliefs, Plaintiff fails to state a claim. *Id.* ("There can be no claim under § 1983 without more than verbal abuse." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986))).

Plaintiff also claims that he was "harassed and humiliated" in retaliation for his grievances after the confrontation with Defendant and because of his religious beliefs. (Compl. at 5.) These allegations are too vague and conclusory to survive a motion to dismiss. *See Vogelfang v. Capra*, No. 10 Civ. 3827, 889 F. Supp. 2d 489, 508 (S.D.N.Y. 2012) (dismissing prisoner's sexual harassment claim where complaint "provide[d] no further description of [the] alleged misconduct"). But because Plaintiff is *pro se*, the Court will give him an opportunity to state with greater specificity any retaliation or harassment that he suffered after his interview with Defendant. *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) ("To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). As with his religion claims, if Plaintiff does not amend within 45 days of this order, his complaint will be dismissed with prejudice.[5]

## CONCLUSION

Plaintiff must amend his complaint within 45 days of this order. If he does not amend his complaint within that time, his complaint will be dismissed with prejudice. The Court directs the Clerk of Court to close this motion. The Court also directs the Clerk of Court to mail a copy of

---

[5] Because Plaintiff is granted leave to amend his complaint, the Court does not reach Defendant's argument that she is entitled to qualified immunity.

this order to Plaintiff and note service on the docket.

**SO ORDERED.**

**Date: May 20, 2014**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**